■ HELEN K. KANDEL, Doing Business as FLEETWOOD NURSING HOME, Petitioner, v. HOLLIS S. INGRAHAM, as Commissioner of Health of the State of New York, et al., Respondents.— Proceeding pursuant to article 78 of the CPLR to review a determination of the respondent State Commissioner of Social Services, dated December 18, 1972, which, with respect to petitioners' nursing home in the City of Yonkers and after a hearing, refused to grant petitioner "a waiver of the relevant provisions of the Life Safety Code of the National Fire Protection Association (21st Ed., 1967)" and to certify petitioner "as a provider of skilled nursing home care" under the State "Medicaid" program established under title XIX of the Federal Social Security Act (U. S. Code, tit. 42, § 1396a et seq.). Determination confirmed, without costs (Matter of Miramichi Nursing Home v. Lavine, 42 A D 2d 570). The stay granted in the order to show cause of the Special Term, Westchester County, dated January 5, 1973, instituting this proceeding, which stay is deemed a stay of all action by respondents in furtherance of the determination under review, shall be

deemed in effect and continued until four months after entry of the order to be made hereon, and for a further period, conditionally, as follows: 1. If prior to the expiration of the four-month continuation of the stay, petitioner shall (a) complete the "Specified Corrections" hereinafter set forth and (b) submit to the respondent State Commissioner of Social Services a written application for a waiver and a continued certification as a provider of skilled nursing home care, based upon proof of completion of the "Specified Corrections", the stay shall be further continued pending determination by said commissioner of said application, which application we direct shall be granted by him upon ascertainment that the "Specified Corrections" have in fact been made. 2. The Specified Corrections are as follows: (a) Extend the present sprinkler system so that there shall be an automatic sprinkler system throughout the facility, in accordance with section 10–234 of the Life Safety Code (21st ed., 1967); (b) Provide self-closing devices for the smoke-tight doors protecting the main interior stairwell; (c) Replace the present roof covering under the exterior fire stairway with a noncombustible covering such as asbestos; (d) Provide a suitable cover to protect the exterior stairway against the accumulation of snow and ice; (e) Replace the windows which face the exterior stairway with metal-sash wire-glass type windows to offer resistance to the passage of heat and flames; and (f) Rehang the door leading from the kitchen to the second interior stairway to render it more perfectly smoke tight. Petitioner is the operator of one of the "Maxwell" nursing homes (*Maxwell* v. *Wyman*, 458 F. 2d 1146) which were originally decertified by the State Department of Social Services at the end of 1971 for failure to comply with the requirements of the Life Safety Code of the National Fire Protection Association as required by title XIX of the Social Security Act (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subcl. [i]; Code of Fed. Reg., tit. 45, § 249.33, subd. [a], par. [1], cl. [vii]). (See *Matter of Maxwell* v. *Lavine*, 41 A D 2d 346.) By Federal court action, however, these decertifications were stayed pending hearings concerning whether a waiver of the applicable sections of the Life Safety Code should be granted (*Maxwell* v. *Wyman, supra*). Waiver is allowed where unreasonable hardship is shown and the waiver will not adversely affect the health and safety of the patients (U. S. Code, tit. 42, § 1396a, subd. [a], par. [28], cl. [F], subcl. [i]). We are of the opinion that there was substantial evidence that petitioner was violating sections 10–1322 and 10–2341 of the Life Safety Code in that her building was not of at least two-hour fire-resistive construction and did not have an automatic sprinkler system "throughout" the facility. The existing sprinkler system (in the basement, stairwells, corridors, kitchen and attic) is thus inadequate. Under the circumstances, a waiver was needed (see *Kruger* v. *Ingraham*, 42 A D 2d 983) and, on the evidence presented at the hearing, the Commissioner of Social Services properly concluded that (as the facility is presently constituted) petitioner had failed to establish that a waiver would not adversely affect the health and safety of the patients (*Matter of Miramichi Nursing Home* v. *Lavine*, 42 A D 2d 570, *supra*). However, we note that the facility has been continuously licensed since the present proprietors took it over in 1962. It is protected by an automatic heat detection system with a coded alarm. The alarm alerts the local Fire Department that an emergency is emanating from this nursing home, necessitating extra men and equipment. The Yonkers Fire Department is all-professional. It has a station within a few blocks of the facility. Its response time is approximately one minute. There are no Fire Department violations outstanding. There is a sprinkler system in the basement, stairwells, corridors and attic. Petitioner adduced extensive evidence of other fire protection systems and devices. James

P. Regan, a recognized fire protection expert, testified that as presently constituted the facility is "reasonably safe" and claimed that the absence of a full sprinkler system does not adversely affect the health and safety of the patients. It was his opinion that a full sprinkler system provides the equivalent of the protection afforded by a two-hour fire-resistive construction. The existing partial sprinkler system was installed in 1966 at the suggestion of the Yonkers Fire Department. The latter advised at the time that it was unnecessary to sprinkler the bedrooms. The Fire Department has never changed its advice. The facility has a current operating certificate issued by the State Department of Health. The State Hospital Code, which took effect in 1966, does not mandate a sprinkler system. Subdivision (1) of section 711.5 thereof states that "Each existing nursing home shall have satisfactory sprinkling and/or a fire detecting system with an alarm connection installed in a manner acceptable to the department" (10 NYCRR 711.5 [1]). In response to the State Commissioner of Social Services having certified petitioner for a six-month Medicaid provider agreement instead of a 12-month certification, petitioner (by letter, dated December 21, 1971, to the commissioner) responded that she was willing to extend the sprinklers throughout the building and implement other specific suggestions made by her fire protection engineer (see the above-mentioned "Specified Corrections"), but that she had been advised that State approval was necessary, and she therefore requested such approval. At the hearing she claimed that the commissioner did not respond to the request. She also asserted that the State has advised that no reconstruction should be done without State approval. It is thus clear that although the determination under review must be confirmed, the facility as presently constituted does meet the standards of the State Health Department with respect to non-Medicaid patients. Under all the circumstances, in the interests of justice, we are granting a limited continuation of the stay in order to afford petitioner an opportunity to promptly make those Life Safety Code corrections which can reasonably be made, i.e., the above-mentioned "Specified Corrections"—which, if originally expressly and clearly required by respondents of petitioner, might have obviated the hearing which was held and these legal proceedings. Rabin, P. J., Hopkins, Munder, Latham and Shapiro, JJ., concur.